## CONRAD CONRAD

*vs.*

## FRED R. WILLIAMS.

*Land Patents: previous grants; caveat; discretion of commis-*
*sioner to extend time.   Deeds and grants: con-*
*struction; calls and courses and distances.*

No patent should issue for land for which a patent has been
previously granted, so long as such patent remains in force.

p. 39

Where the courses and distances in a grant do not agree
with a call, the latter must prevail.                           p. 40

Lands formed by alluvion, or receding waters, belong, in gen-
eral, to the riparian proprietor.                              p. 40

When a caveat filed in the Land Office can not be heard on
the day fixed, within twelve months of entering the same, the
commissioner should extend the time upon proper cause shown.

p. 41

*Decided May 2nd, 1913.*

Appeal from the Commissioner of the Land Office of Mary-
land (HANSON, Commissioner).

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*James J. Archer,* for the appellant.

*Stevenson A. Williams,* for the appellee.

BURKE, J., delivered the opinion of the Court.

On the 29th of September, 1769, a patent was issued by the State of Maryland to Jacob Giles for a tract of land called "Rumney Marsh," located in Baltimore county, and containing eleven hundred and eight-four acres. This land was particularly described in the patent which is of record in the Land Office. A certificate and plat of "Rumney Marsh" are recorded in that office,—the certificate of re-survey being dated March 25th, 1755. The first, second, third and fourth lines of "Rumney Marsh," as disclosed by the patent, run as follows:

"Beginning at a bounded sweet gum tree standing by a great swamp or pocoson, it being the beginning tree of the land called 'Dogwood Ridge,' and running thence north sixty perches unto the beginning of the tract of land 'The Marsh,' then bounding on 'The Marsh,' *'then bounding on the Marsh,'* northeast by east sixty perches until it intersects the north northeast one hundred and fifty perches line of a tract of land called 'Uties Rumney;' then bounding on that line of 'Uties Rumney' to the end thereof, north northeast thirty-four perches; then still bounding on the said line east thirty-two perches until it intersects the first line of the land called 'The Marsh;' *then bounding on that line northeast by east thirteen perches unto Rumney Creek side;* then bounding upward on the said creek the three following courses, etc."

On the 2nd day of April, 1910, a warrant was issued out of the Land Office directed to W. Elijah Somerville, a surveyor, to survey for Frederick R. Williams about one acre of vacant land in Harford county, bounded on the north by the land of Conrad Conrad; on the east by the middle of Rumney Creek and also by the lands of the Taylor's Island Ducking and Fishing Company, of Baltimore City; on the south by the lands of Robert Archer; and on the west by the lands of the said Conrad.

Mr. Somerville executed the warrant and filed in the Land Office a certificate of survey of eight acres and thirty-seven square perches of land by the name of "Maude Price's Price." The land surveyed is particularly described by courses and distances, and the certificate states that no part of the land described is covered by navigable water. The first, second, third and fourth lines of the land embraced in the certificate are as follows: "Beginning for the same at the end of the fifth or north fifty-five degrees east sixty perches line of a tract of land called 'Drew's Enlargement Improved' (Certficate of Re-Survey for Joseph Lusby, dated 15th day of December, 1761), which said beginning point is also the beginning of the 3rd or north northeast thirty-four perches line of a tract of land called 'Rumney Marsh' (Certificate of Re-Survey, dated 25th day of March, 1755, for Ann Atkinson, patented 29th September, 1769, to Jacob Giles), then with and binding on said "Rumney Marsh" with an allowance of three degrees, thirty-five minutes to the right to correct variation, the following four courses and distances; north twenty-six degrees, five minutes east thirty-four perches; south eighty-six degrees, twenty-five minutes east thirty-two perches; north fifty-nine degrees, fifty minutes east thirteen perches; north twelve degrees, twenty-five minutes west thirty and three-tenths perches, more or less, to the westerly shore of Romney Creek." A copy of the plat returned by the surveyor which is here inserted, will show the location of the land in dispute.

NOTE—The said lines numbered 3, 4, 5, with arabic numerals are the 3d, 4th and 5th lines of "Rumney Marsh" with the 5th line carried to Rumney Creek, as called for in the certificate of survey and patent of said "Rumney Marsh" (The next 3 courses of "Rumney Marsh" run North-Westward binding on said creek for a distance of 112 perches).

Three facts are apparent from the patent of "Rumney Marsh" granted to Jacob Giles in 1769 and from the certificate and plat made and returned to the Land Office by Mr. Somerville: First, that the first, second and third lines of "Maud Price's Price," which is claimed to be vacant land, correspond with the third, fourth and fifth lines of "Rumney Marsh" patented to Jacob Giles; and secondly, that a vacancy was created by rejecting or disregarding the call,—Romney Creek Side, in the Giles patent; and thirdly, that there would

exist no vacancy west of Romney Creek and north of the first, second and third lines of "Maud Price's Price" had Mr. Somerville adopted the *call* instead of *distance* in the Giles patent in running the third line of "Maud Price's Price."

On the 18th of March, 1911, Conrad Conrad filed with the Commissioner of the Land Office a caveat to the issuing of a patent to Mr. Williams for the land described in the survey made by Mr. Somerville, and on the 15th of March, 1912, he applied to the Commissioner to set a day for a hearing upon the caveat, and called his attention on the 21st of March, 1912, to the courses and distances in the Giles patent, and on the 26th of March, 1912, he directed the Commissioner to file in the caveat proceeding a certified copy of the patent issued to Jacob Giles in 1769. The record of the Land Office shows the following entries in this case:

"Verbal application was made by counsel for the caveator (3/15/12), and later made in writing for the setting of a day for the hearing in this matter. The Commissioner upon mature consideration decided this to be a physical impossibility, because of the absolute lack of time for the proper serving subpœna and other necessary notice for a hearing before the caveat would become vacated by operation of law. Therefore it is on March 27th, 1912—Ordered that the caveat of Conrad Conrad be and the same is hereby dismissed as per request of caveatee; the same being released by operation of law, and patent to issue. Caveator to pay costs."

CLOSED.

The appeal before us was taken from this order.

Upon the facts we have stated, we are of opinion that the order appealed from must be reversed, and the case remanded to the Commissioner of the Land Office in order that the caveat may be heard and determined upon its merits. The general and well settled rule of the Land Office is, that no patent shall be issued for any land for which a patent has been previously granted, so long as such patent remains in

force; and it is equally undeniable that exceptions to this general rule should be admitted with much caution. *Smith, Executor;* v. *Baker,* 4 Md. Chancery, 29 and other cases.

It is also well settled that where the courses and distances in a grant do not agree with the call, the call will prevail and the courses and distances will be rejected. It is said in *Hammond* v. *Ridgely,* 5 H. & J. 245, that "in doubtful cases, the exposition is to be given which is most beneficial to the grantee; and pursuant to that principle, the preference was given to calls originally because generally, the location by calls gave the grantee more land than the location according to course and distance. Almost every grant that has calls, as well as courses and distances, is susceptible to a double location, because the call, and the course and distance, seldom, if ever, precisely agree. If the call is imperative or peremptory, in the judgment of the Court, it must be complied with, and the course and distance rejected, if they do not correspond with the call. If the call is not imperative, or cannot be proved, the location must be according to course and distance."

Tested by this rule, the act of the surveyor in running the third line of "Maud Price's Price" was wrong, because he rejected the call in the Giles patent, and adopted the distance in the fourth line of that patent. He should have been controlled by the call and not by the distance of the line. It may well be assumed that in 1769 thirteen perches in the fifth line of "Rumney Marsh" would have carried to Rumney Creek Side,—the call mentioned in the Giles patent, and that the failure of that distance now to reach the call is due to alluvion or receding waters in the intervening years, in which case the added land would belong to the riparian proprietor and could be taken up as vacant land. *Linthicum* v. *Coan,* 64 Md. 453.

The facts before the Commissioner at the time he passed the order appealed.from presented a *prima facie* case in support of the caveator's contention. It was a contested case within the principles announced in *Jay* v. *Van Bibber,* 94

Md. 688, and the Commissioner in dismissing the caveat under the circumstances disclosed by the record fell into an error. The caveator had a right to a hearing, and the commissioner made a mistake in assuming that the caveat could not be heard within the time limited by law. It was his duty to have set a day for the hearing upon the request of the caveator made on the 15th of March, 1912, and if the case could not have been heard upon the day fixed, within the period of twelve months of entering the same, the commissioner had the power to grant further time "Under special circumstances," presented to him.

*Order reversed, with costs to the appellant, and case remanded for a hearing on the caveat.*